WARD et al, Appellants, v. CITY OF DE SMET et al,·
Respondents.

(208 N. W. 770.)

(File No. 5891.   Opinion filed May 5, 1926.)

1. **Municipal Corporations—Contracts—Compensation on Basis of Extra Work Necessitated in Construction of Disposal Plant Held Limited to Tank as Provided by Contract.**

    Where contract for construction of disposal plant provided that tank is to be paid for separately at price bid, unless extra work is necessary, compensation for extra work can be claimed only for construction of tank, and not for remainder of work embraced in same proposition of contract as tank.

2. **Municipal Corporations—Finding that Quicksand Was Unusual Condition Under Contract for Construction of Public Work Held Supported by Evidence.**

    Finding that quicksand encountered in construction of tank for disposal plant was an unusual condition, within provision of contract providing for different compensation in such case, held supported by the evidence.

3. **Municipal Corporations—Finding that City Had Engineer to Supervise Construction of Public Work Held Unsupported by Evidence.**

    Finding that city had an engineer at its command to supervise construction of disposal plant, as required by contract, held not supported by evidence, where state engineer consulted refused to direct construction.

4. **Municipal Corporations—Additional Expense by Changes in Construction of Public Work Must Be Borne by City.**

    Where disposal plant was constructed as provided by contract, any changes entailing additional expense would have to be borne by city, regardless of whether methods used were not of the best.

5. **Municipal Corporations—Finding that Water Required to Be Pumped in Construction of Public Work Did Not Involve Additional Expense Held Supported by Evidence.**

    Finding that flow of water required to be pumped in construction of tank for disposal plant did not exceed amounts specified in contract, but, if flow was greater, it did not involve added expense, held supported by evidence.

6. **Municipal Corporations—Contractor Held Entitled to Compensation for Extra Expense Incurred in Removing Earth in Construction of Disposal Plant.**

Plaintiffs constructing tank for municipal disposal plant compelled to remove earth greatly in excess of that filling space occupied by tank, due to cave-ins, held entitled to compensation for extra labor and expense incurred under contract providing for extra compensation if extra work was necessary.

7. **Municipal Corporations—Methods Used in Constructing Public Work Is of No Concern to City, Where Work Is Done at Contract Price.**

Where price bid governed construction of tank for disposal plant, it is of no concern to city whether equipment used was adequate so long as job was completed in workmanlike manner within time limited by contract.

8. **Municipal Corporations—City May Reduce Liability Under Contract for Cost of Construction to Amount Necessarily Expended Under Conditions Encountered.**

Where contractor claims right to recover under contract providing for cost of construction plus profit of tank for disposal plant, city may show that unnecessary expense was incurred and reduce its liability to amount necessarily expended in construction under conditions encountered.

9. **Municipal Corporations—In Determining Necessity of Expenditure in Construction of Public Work, Circumstances at Time of Expenditure Must Be Considered.**

In determining necessity of expenditure under contract for construction of tank for municipal disposal plant, circumstances existing at time of making expenditure and its then apparent necessity must be considered, and not methods which it subsequently appears would have been less costly.

10. **Municipal Corporations—Contractor Incurring Difficulties in Public Work Held Entitled to Cost of Construction Less Damages for Inefficient Work.**

Where special difficulties were incurred in construction of tank for municipal disposal plant, contractor held entitled to cost of construction as provided for in such case, less any damage caused by inefficient work resulting in unnecessary expense and delay.

---

Note.—See, Headnote (1), American Key-Numbered Digest, Municipal corporations, Key-No. 360(6), 28 Cyc. 1051; (2), (3) and (5), Municipal corporations, Key-No. 374(4), 28 Cyc. 1062; (4) Municipal corporations, Key-No. 360(3), 28 Cyc. 1050; (6), (9) and (10), Municipal corporations, Key-No. 360(1), 28 Cyc. 1051 (Anno.); (7) Municipal corporations, Key-No. 360(1), 28 Cyc. 1048; (8) Municipal corporations, Key-No. 360(1), 28 Cyc. 1060.

Appeal from Circuit Court, Kingsbury County; HON. M. MORIARTY, Judge.

Action by N. L. Ward and others against the City of De Smet, a municipal corporation, and others. From an adverse judgment, plaintiffs appeal. Reversed and remanded.

*Kirby, Kirby & Kirby,* of Sioux Falls, for Appellants.

*Wm. H. Warren,* of De Smet, for Respondents.

BURCH, C. This action involves the interpretation of and the right to recover upon a contract for the construction of certain public works in the city of De Smet. In June, 1922, the city entered into a contract with O. N. Gjellefald for the construction of certain public works for the city, which, among other things, included the construction of a disposal plant. In the contract the disposal plant is known as "Proposition VIII." The provision of the contract as to this work reads:

"This section includes disposal tank, sludge bed. by-pass, outlet and head wall as well as the inclosing fence and all work within the inclosure excepting the sewer leading into the manhole A. Payment for this will be made at the lump sum bid except that the outlet tile will be paid for at the unit price bid per linear foot, and the Imhoff tank will be paid for separately. The price bid for the Imhoff tank is to be based on the usual method of excavating and sheeting a pit in which the tank is constructed or by sinking the shell of the tank by excavating from the inside, and shall include all pumping expense necessary to handle a flow up to 800 gallons per minute. Should larger quantities of water or difficult material be encountered, necessitating extra work, or special methods of construction in the opinion of the engineer, and should in that case the actual cost of the completed tank, plus fifteen per cent as determined by the engineer, exceed the price bid therefor, such excess will be paid in addition to the price bid. It is the intention of this clause to indemnify the contractor for loss not due to carelessness arising from the hazards of deep underground work."

This construction work (proposition VIII) was sublet by Gjellefald to plaintiffs, Ward and Weighton, upon the same terms as existed between the city and Gjellefald. The rights of plaintiff are controlled by the contract with Gjellefald, and in this opinion

we will refer to the contract and the rights of the parties as if the contract were direct between the city and plaintiffs.

Plaintiffs did construction work on other propositions named in the contract, but there is no dispute as to their rights on the other work. Some time after completion of all the work, plaintiffs filed with the city auditor a lien and claim for $15,562.43; but certain credits were admitted on the trial reducing the claim to $13,182.12. The claim contains items for labor, material, and sundry charges, and covers the account between the city and plaintiffs for all of the work. Plaintiffs claim the right to recover not only all that was due them under the bid, but a large sum in addition because of the clause of the contract above quoted indemnifying them against the hazards of deep underground work. They claim there were unusual conditions encountered in digging which entitled them to such indemnity. The decision of this case depends upon the construction to be given such clause of the contract and the facts applicable.

[1] Except as such clause gives a right to additional payment, plaintiffs must do the work for the price bid. The price bid for all the work covered in proposition VIII was $7,883, and this amount was separated in items as follows: Imhoff tank, $5,468; sludge bed, by-pass and concrete outfall, $1,050; 100-foot drain tile, $900; 350-foot drain tile, $315; and concrete, $150. The clause of the contract under consideration applied to the Imhoff tank only, and the only item above that may be increased is that of $5,468. The others are not affected by this clause. Neither the plaintiffs nor the city, however, have made this distinction in the accounts submitted or in the proof. Plaintiffs have sought to show the entire cost of the construction provided for under proposition VIII and to recover therefor regardless of the contract price. This cannot be done. Plaintiffs are not entitled to more than the contract price, for any item of proposition VIII except the Imhoff tank. If they are to receive more for this item, it is because that price is superseded by the terms of the contract guarding against the hazard of deep underground work. The hazards were water and difficult material. It does not appear that any damage resulted from an excess of water. But difficult material was encountered, that is, quicksand, and if this necessitated extra work or special methods of construction, then, instead of

plaintiffs being entitled to the contract price of $5,468, they were to be paid the actual costs of the completed tank plus 15 per cent, if that exceeded the price bid. No special method of construction was used, but it does appear that the quicksand necessitated extra work, and that the cost of the tank was more than the price bid.

[2, 3] The method provided by the contract for sinking the tank to be used was by digging from within and allowing the tank to settle. The evidence shows the tank was to be sunk in a hole 20 feet in diameter and 34 feet 9 inches deep. The pit into which the tank was to be set was dug about 3 feet in depth when a section of the tank, a cement cylinder, was built, 22 feet in height, with the lower end in the pit. The tank was then lowered by digging from within, and as the earth was taken out of the hole and from around the edges and underneath the cement cylinder, the cylinder settled, and in this manner the tank was lowered into the earth. The digging was done by workmen filling buckets, which would be hoisted and dumped, or by a self-filling bucket operated by an engine. Both methods were used to the end of the job. At the depth of about 4 feet water was encountered, and as the hole was deepened the flow of water increased. When the tank was down about 20 feet, there was not only encountered large volumes of water, but the soil was found to be quicksand which caved and ran in under the edges of the cylinder and, under the pressure of the water running in, boiled up in the center of the hole, making the excavating not only difficult because of the fineness of the sand, but also causing extensive caves to form under the top layer of the earth outside of the cylinder until in time the top soil caved in. It is claimed by plaintiff that this was an unusual condition. The court made a finding of fact to that effect, and the finding is amply supported by evidence. What was done thereafter forms the gist of this action. There are many other provisions of the contract influencing the actions of the parties, which we will not set out here, but which will be alluded to as we proceed. The city was to furnish an engineer who should decide all disputes arising from the construction of the work; no alteration was to be made in the plans or specifications or extra work done without his consent, evidenced by a description in writing of the alteration to be made or extra work done. The city employed an engineer until April 16, 1923, when he was dis-

charged. The work on the tank was not completed until October of 1923, and during nearly, if not all, of the time after discovery of the quicksand no engineer was available. The court found that after the 16th of April "there was not an engineer in constant supervision of the work, but that the city had an engineer at its command at any time who could be called at any time and consulted by the contractor." We do not think this finding is supported by the evidence. While the state engineer was consulted a few times and made some suggestions, he refused to direct construction, claiming that such act would be inconsistent with his duties to the state in supervising sanitation.

[4-6] The city commission and foreman of the construction crew had several consultations as to what should be done. Plaintiffs desired to use sheet steel to exclude the sand while digging, and the state engineer advised this; but to avoid expense the city authorities desired to try some other method, and baled hay was used around the outside of the tank in an attempt to exclude the sand. The various expedients tried seem to have been acquiesced in by the city if not directly commanded. It is now contended that the methods of construction were not the best. Whether they were or not, the manner of construction by excavating from within was the manner provided by the contract, and any change that may have been best entailing additional expense would have to be borne by the city. The contract contemplates the usual manner of construction, with a provision to protect the contractor if such manner could not be used. Because of the quicksand, the job was more difficult and required extra labor. It is apparent that if the condition of the soil would permit, the tank could be lowered by removing the amount of earth filling the space to be occupied by the tank. There might be a large amount of water to be pumped to keep the hole in condition for the workmen, but no more earth would have to be removed. Plaintiffs were obliged to pump the water at their own expense, so long as the amount to be pumped did not exceed 800 gallons per minute; if there had been more they would have been entitled to pay for only the excess, and not then unless the additional pumping entailed expense. We think the court rightly held that the flow of water required to be pumped did not exceed 800 gallons per minute, but if the flow of water was any greater there is no evidence of added expense.

It is also apparent that under the condition found the tank could not be lowered without removing earth greatly in excess of that filling the space to be occupied by the tank owing to the caving of the sand and its running into the hole under the edge of the tank while it was being lowered. This removal of a large additional amount of earth required much additional labor and expense for which plaintiffs are entitled to pay.

[7-10] Complaint is made that the equipment was not adequate, and that the bucket used was not the best for existing conditions. While the price bid governed, it was no concern of the city whether the capacity of the bucket was ample or not, or whether the methods used were efficient, so long as the job was completed in a good and workmanlike manner within the time limit according to contract. But when plaintiffs claim the right to recover the cost of the construction, it is a matter of vital interest to the city that unnecessary expense be not incurred, and if unnecessary expense was incurred the city has a right to show that fact and reduce its liability to the amount necessarily expended in constructing the Imhoff tank under the conditions encountered. In determining the necessity of the expenditure, however, the court must have in mind the circumstances existing at the time of making the expenditure and its then apparent necessity. The court cannot say that, in the light of subsequent events, another method would have been less costly, and therefore the city is not liable for the expense incurred, if at the time the expenditure under the then existing conditions appeared necessary and proper. If the contractor employed methods and machinery in accordance with good engineering practice based upon ordinary and reasonable judgment from time to time, he should not now be penalized, because looking backward we are able to see, in view of what actually did happen, that he was mistaken in his judgment. The proper basis for an accounting does not seem to have been used by the trial court. Plaintiffs should be allowed to recover the cost of the construction of the Imhoff tank, less any damage caused by inefficient work resulting in unnecessary expense and unnecessary delay.

The judgment and order is reversed, and the cause remanded.

POLLEY, J., not sitting.

MISER, Circuit Judge, sitting in lieu of SHERWOOD, J.